UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER PAUL SWOGGER, ) | CASE NO. 5:17CV348 |
| ) | |
| Plaintiff, ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| NANCY A. BERRYHILL[1], ) | |
| ACTING COMMISSIONER OF SOCIAL ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, ) | OF MAGISTRATE JUDGE |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Christopher Paul Swogger ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In his brief on the merits, filed on July 10, 2017, Plaintiff asserts that the administrative law judge's ("ALJ") decision is not supported by substantial evidence. ECF Dkt. #15. Defendant filed a response brief on August 9, 2017. ECF Dkt. #16. Plaintiff filed a reply brief on August 21, 2017. ECF Dkt. #17.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI in December 2013 alleging disability beginning on November 24, 2011. ECF Dkt. #11 ("Tr.") at 178, 180.[2]  The applications were

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

denied initially and upon reconsideration, and Plaintiff requested a hearing before an ALJ. *Id.* at 111,118, 127, 134. The hearing in this matter was held on September 25, 2015. *Id.* at 29. On November 2, 2015, the ALJ issued a decision denying Plaintiff's claims. *Id.* at 9. Subsequently, the Appeals Council denied Plaintiff's request for review. *Id.* at 1. Accordingly, the November 2, 2015, decision issued by the ALJ stands as the final decision.

The instant suit was filed by Plaintiff on February 21, 2017. ECF Dkt. #1. On July 10, 2017, Plaintiff filed a brief on the merits. ECF Dkt. #15. Defendant filed a response brief on August 9, 2017. ECF Dkt. #16. Plaintiff filed a reply brief on August 21, 2017. ECF Dkt. #17.

## II. RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A, Medical Evidence

In August 2011, Plaintiff was diagnosed with a visually significant cataract in his left eye and a mild cataract in his right eye. Tr. at 341. The following month, Plaintiff reported blurry vision in the left eye that had worsened over the prior two to three years. *Id.* at 327. The impression was a history of remote trauma with a visually significant dense brunescent cataract in the left eye. *Id.* at 329. Also in September 2011, Plaintiff was seen for a psychiatric assessment, and was diagnosed with depression and anxiety. *Id.* at 336. In October 2011, Plaintiff was seen for medication reconciliation. *Id.* at 428. Plaintiff's symptoms included rapid thoughts and difficulty focusing, and he reported that he felt that he was less moody and irritable when he reduced his coffee intake from ten cups daily to one to three cups per day. *Id.* On December 1, 2011, Plaintiff underwent left eye surgery for his cataract and his sutures were removed approximately one week later. *Id.* at 397, 407, 463. On December 9, 2011, Plaintiff reported depression at a 7/10 rating and anxiety at a 5/10 rating. *Id.* at 393. Plaintiff reported improved mood in July 2012. *Id.* at 385.

On July 13, 2012, an x-ray of Plaintiff's spine showed spondylolysis and anterolistesis at L5-S1. Tr. at 270. Plaintiff attended seven physical therapy appointments from July 23, 2012, to August 16, 2016, and reported a seventy-five percent improvement in his muscle pain, but no improvement regarding his spinal pain. *Id.* at 259. On August 30, 2012, Plaintiff reported a

stabbing pain in the back of his left eye. *Id.* at 381. Plaintiff was seen over the course of the next several months for iritis examinations. *Id.* at 361, 369, 375. The impression was: resolving/resolved low-grade iritis with macular thickening; status post cataract extraction with posterior intraocular lens in the left eye with good results; and a mild cataract in the right eye. *Id.* at 363, 369, 377, 380. On October 29, 2013, Plaintiff indicated that he was doing "okay" mentally. Tr. at 348. Plaintiff reported a loss of vision in his left eye in November 2013 after a hard sneeze, but his vision was stable at the time of the appointment. *Id.* at 345. It was also noted that Plaintiff had a longstanding history of floaters and a history of low-grade iritis in his left eye. *Id.*

State agency medical consultant Gary Hinzman, M.D., issued an opinion on February 13, 2014, stating that Plaintiff could: occasionally lift/carry up to twenty pounds; frequently lift/carry ten pounds; stand/walk about six hours in an eight-hour workday; sit more than six hours in an eight-hour workday; perform unlimited pushing/pulling except as limited by the lift/carry restrictions; frequently climb ramps/stairs; never climb ladders, ropes, or scaffolds; frequently stoop; and perform unlimited balancing, kneeling, crouching, and crawling. Tr. at 67-68. Dr. Hinzman's opinion was affirmed by Derald Klyop, M.D., on May 23, 2014. *Id.* at 90.

On April 7, 2014, Plaintiff reported having difficulty with his back and hands during a behavior and therapy session. *Id.* at 480. Plaintiff was hospitalized from July 3, 2014, through July 6, 2014 following a motorcycle accident that resulted in a pelvic fracture. Tr. at 492. X-rays showed multilevel degenerative disc disease with spinal canal narrowing and slight cord compression. *Id.* at 499. On July 17, 2014, follow-up x-rays confirmed a non-displaced pelvic fracture. *Id.* at 523. Plaintiff was seen at the end of July 2014 for an additional follow-up appointment and he exhibited generalized joint pain, discomfort when moving his extremities, and ambulation with a cane. *Id.* at 528. In September 2014, Plaintiff reported numbness in his left arm and hand, and neck stiffness. *Id.* at 526. Also in September 2014, Plaintiff reported sharp pelvic pains, but x-rays showed that his pelvic fracture was completely healed and in a good position. *Id.* at 520. On October 21, 2014, Plaintiff reported continued stabbing pain in his lumbar spine that was aggravated by walking. *Id.* at 547. An examination showed tenderness

and loss of range of motion in the lumbar region. *Id.* On January 22, 2015, Plaintiff was seen for a follow-up appointment, and it was noted that he was stable and his symptoms were the same as before the motorcycle accident. *Id.* at 545.

In a mental health treatment session in August 2015, Plaintiff reported that the injuries from his motorcycle accident were so severe that he was applying for Social Security benefits to help with his finances. Tr. at 578. Plaintiff declined any additional mental health services against the recommendation of the service provider. *Id.* On August 19, 2015, Plaintiff underwent a pain consultation and reported: chronic pain in his right hand since the motorcycle accident that he attempted to manage by smoking marijuana; that he was no longer using cocaine; and a history of degenerative disc disease. *Id.* at 576.

### B. Testimonial Evidence

The ALJ held a hearing on September 25, 2015. Tr. at 29. At the hearing, Plaintiff testified that he had a valid driver's license and had been living alone before moving in with his father a few weeks prior. *Id.* at 36. Plaintiff stated that he served three years in the military and had been honorably discharged. *Id.* at 37. Continuing, Plaintiff testified that he had not worked since he was laid off in 2009. *Id.* Plaintiff indicated that in 2008 he suffered a work-place injury resulting in the fingers in his right hand being broken in thirty-six places. *Id.* at 50. When asked more about the accident, Plaintiff stated that he was right hand dominant and that he "can't open a lot of jars anymore" due to loss of strength. *Id.* at 51-52.

Next, Plaintiff testified that he had tried to work at other jobs, but had not been hired. Tr. at 45. Plaintiff stated that he believed he had not been hired at these jobs due to his age. *Id.* When asked why he was unable to work, Plaintiff cited pain in his back and hand. *Id.* Plaintiff testified that he volunteered at his church "once in a while" and that he had not performed any side jobs since 2009. *Id.* at 37-38. Continuing, Plaintiff reported that he was seeing a psychiatrist for depression and anxiety following the death of his wife. *Id.* at 46.

After examining Plaintiff, the ALJ examined a vocational expert ("VE"). Tr. at 54. The VE testified that Plaintiff's past relevant work included work as a construction inspector. *Id.* at 55. The VE explained that construction inspector work was generally categorized as work at the

-4-

light exertion level, but had been performed by Plaintiff at the medium exertion level. *Id.* Additionally, the VE testified that Plaintiff had performed work as a carpenter and CNC machine operator, both of which were performed at the medium exertion level. *Id.* The ALJ then asked the VE whether any of the skills acquired in these jobs would transfer into a light exertional level hypothetical. *Id.* at 56. The VE testified that the construction inspector job was a light exertional level job, but that he did not believe that the skills from the carpenter or CNC machine operator jobs would transfer to the light exertional level. *Id.*

Next, the ALJ posed a hypothetical individual with Plaintiff's age, education, and work experience, that was limited to: occasionally lifting and carrying twenty pounds; frequently lifting and carrying ten pounds; sitting, standing, and walking for up to six hours; pushing and pulling as much as the individual could lift or carry; frequently climbing stairs; never climbing ladders, ropes, or scaffolds; and frequently stooping, kneeling, crouching, and crawling. Tr. at 56. The ALJ then asked whether the hypothetical individual could perform any of Plaintiff's past jobs, and the VE responded that such an individual could perform work as a construction inspector, as described in the *Dictionary of Occupations Titles* ("DOT"). *Id.* Continuing, the VE stated that the hypothetical individual could also perform work at the light exertional level as a mail clerk, sales attendant, and housekeeping cleaner. *Id.* at 57. The ALJ then asked whether the additional limitation of frequent use of hand controls would change the VE's answer regarding the individual. *Id.* The VE responded in the negative. *Id.* The ALJ asked several times whether the VE's testimony was consistent with the DOT, and the VE responded affirmatively each time. *Id.* at 57-58.

### III. RELEVANT PORTIONS OF THE ALJ'S DECISION

On November 2, 2015, the ALJ issued a decision denying Plaintiff's claims. Tr. at 9. The ALJ stated that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, and that he had not engaged in substantial gainful activity since November 24, 2011, the alleged onset date. *Id.* at 14. Continuing, the ALJ indicated that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; hepatitis C; status-post fracture right upper extremity; status-post fracture of pelvis; and

cataracts.  *Id.*  The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 15.

After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations: frequent pushing and pulling, including the operation of hand controls, with the right upper extremity; frequent handling with the right upper extremity; frequent stooping, kneel, crouching, and kneeling; frequent climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; and no exposure to bright light (such as light-emitting diodes).  Tr. at 16.

The ALJ also discussed Plaintiff's activities of daily living, noting that he reported the following daily activities: the ability to attend to his personal hygiene and grooming; managing an independent household, including all typical household chores such as laundry, cleaning, repair, lawn care, and meal preparation; managing his own medications, finances, and appointments; caring for household pets; driving a car and riding a motorcycle; shopping in stores; managing an email account; attending church regularly; volunteering at a local shelter; belonging to a men's group; watching movies; building models for pleasure; using a computer; and caring for his elderly father.  Tr. at 20.

Next, the ALJ found that Plaintiff was capable of performing past relevant work as a construction inspector as it was light exertional work, although Plaintiff had performed the work at the medium exertional level in the past.  Tr. at 21.  The ALJ stated that this work did not require the performance of work-related activities precluded by Plaintiff's RFC.  *Id.*  Despite finding that Plaintiff could perform the kind of work he has done in the past at step four of the sequential evaluation, the ALJ continued to step five and indicated that the VE testified that Plaintiff could perform work as a mail clerk, sales attendant, and housekeeper.  *Id.* at 22.  The ALJ then stated that, pursuant to Social Security Ruling ("SSR" 00-4p), it was determined that the VE's testimony was consistent with the information contained in the DOT, and that the VE explained that any variance in the testimony, to the extent it differed from the DOT, was based

on experience and training. *Id.* Based on these above, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 24, 2011, through the date of the decision. *Id.* at 23.

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence

supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937(citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## VI. LAW AND ANALYSIS

Plaintiff asserts that the ALJ's step four conclusion is not supported by substantial evidence because the RFC finding precluded performance of his past relevant work as a construction inspector. ECF Dkt. #15 at 12. Specifically, Plaintiff avers that the ALJ's RFC finding specified that he could never climb ladders, ropes, or scaffolds, but found that he could perform work as a construction inspector - a job that required occasional climbing.[3] *Id.* Plaintiff states that the record in this case establishes that his work as a construction inspector required him to climb for six hours in an eight-hour workday. *Id.* at 12-13 (citing Tr. at 234). Continuing, Plaintiff indicates that the record also establishes that he could no longer climb. *Id.*

---

[3]Plaintiff cites the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"). ECF Dkt. #15 at 12. The SCO is the companion publication to the DOT. SSR 00-4p.

(citing Tr. at 241-42). Citing the DOT description of the construction inspector job, Plaintiff argues that it stands to reason that an individual that is unable to climb ladders would be unable to perform work as a construction inspector. ECF Dkt. #15 at 13. Plaintiff asserts that this inconsistency was not resolved during the hearing or in the ALJ's decision, and that the ALJ failed to obtain a reasonable explanation for this apparent conflict. *Id.* According to Plaintiff, the RFC finding precluded the performance of the job of construction inspector, and thereby the ALJ's conclusion that Plaintiff was not disabled at step four is not supported by substantial evidence. *Id.* at 14.

Additionally, Plaintiff claims that he would have been considered disabled under the Medical Vocational Rules (also referred to as the "Grids") had the ALJ properly determined that he could not perform his past relevant work. ECF Dkt. #15 at 14. To this end, Plaintiff states that an ALJ must award benefits at step five if the Grids mandate a finding of disability with respect to the exertional limitations alone. *Id.* Plaintiff asserts that the record reflects that Rule 202.06 requires a finding of disability in his case. *Id.*

Defendant contends that the ALJ properly found that Plaintiff could perform a range of light work and that he remained capable of performing his past relevant work as a construction inspector. ECF Dkt. #16 at 3-4. Continuing, Defendant states that the Plaintiff must show that he is unable to return to his past relevant work either as he performed that work or as that work is generally performed in the national economy. *Id.* at 5 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989)). Defendant argues that while the DOT does state that the construction inspector job required occasional climbing, it does not indicate that the job required occasional climbing of ladders, ropes, or scaffolds. *Id.* (citing DOT, 182.267-010 Construction Inspector).

Regarding the hearing, Defendant avers that the ALJ specifically included the appropriate limitations in the hypothetical question and the VE testified that the hypothetical individual could perform work as a construction inspector. ECF Dkt. #16 at 5-6. Defendant states that the ALJ asked the VE whether his testimony conflicted with the DOT and the VE indicated that his testimony was consistent with the DOT. *Id.* Continuing, Defendant asserts that the ALJ was not

required to independently search for conflicts not brought to his attention when he asked the VE whether his testimony conflicted with the DOT.  *Id.* at 6 (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009)).  Defendant notes that Plaintiff did not object to the VE's qualification as an expert, and did not ask the VE expert any questions regarding the climbing requirements for the construction inspector position.  According to Defendant, the ALJ satisfied all obligations under SSR 00-4p and properly relied on the unquestioned testimony of the vocational expert.  *Id.*  Finally, Defendant asserts that this case was decided by the ALJ at step four, and thus the Medical-Vocation Guidelines are not applicable since the case did not proceed to step five.  *Id.* at 6-7.

The main argument presented by Plaintiff is that he could not return to his prior work as a construction inspector because that job requires the ability to occasionally climb.  Plaintiff correctly asserts that the DOT indicates that the job of construction inspector requires occasional climbing.  *See* DOT, 182.267-010 Construction Inspector, 1991 WL 671170.  Further, Plaintiff correctly indicates that the SCO defines "climbing" to include "[a]scending or descending ladders, stairs, scaffolding, ramps, poles, and the like..." ECF Dkt. #15-2 at 3.  According to Plaintiff, the job of construction inspector is precluded by the ALJ's RFC finding since the finding stated that Plaintiff could never climb ladders, ropes, or scaffolds.  Tr. at 16.

Plaintiff's argument is correct insofar as the ALJ's RFC finding conflicts with the DOT's indication that the job of construction inspector requires occasional climbing since the ALJ indicated that Plaintiff could never climb ladder, ropes, or scaffolds.  However, the ALJ relied on the VE's testimony when determining that Plaintiff could perform work as a construction inspector.  After posing the first hypothetical individual, who was limited to never climbing ladders and scaffolds, the VE testified that "[t]he construction inspector job could still be done with those limitations, Your Honor, as the DOT describes, not as performed."[4]  Tr. at 56.

---

[4] The portion of this statement indicating that Plaintiff could perform the job of construction inspector "as the DOT describes, not as performed," is recognizing that when Plaintiff worked as a construction inspector in the past he was working at the medium exertional level, but that the DOT places the jobs of construction inspector at the light exertional level.  *See* Tr. at 56.  The VE recognizes that Plaintiff's past work as a construction inspector had more rigorous physical requirements than typical of the job, and that

-10-

Plaintiff did not object to that VE's indication that he could perform work as a construction inspector with the climbing limitations, and did not question the VE further in that regard when afforded the opportunity at the hearing. Tr. at 56, 58-59. In the decision, the ALJ stated that Plaintiff's ability to perform work as a construction inspector, as it is generally performed, was consistent with the testimony of the VE. Tr. at 21.

The ALJ's finding that Plaintiff could perform work as a construction inspector, as generally performed, was supported by the testimony provided by the VE. The VE testified that an individual with the limitations that later formed the ALJ's RFC finding could perform the job of construction inspector. Tr. at 56. Plaintiff did not object to the VE's assessment or question the VE on this matter, and likewise did not question the VE's expertise or qualification to submit testimony to the ALJ. *See* Tr. at 54, 58-59. In his brief on the merits, Plaintiff asserts that the ALJ failed to identify and obtain an explanation for this conflict; however, the ALJ satisfied his obligation under SSR 00-4p when he repeatedly asked the VE whether the testimony was consistent with the DOT. Tr. at 57-58 (*see Lidnsley*, 560 F.3d at 606).[5] Here, the VE credibly

---

Plaintiff could perform the job with the normal light exertional requirements contemplated by the DOT. *See id.*; Additionally, the undersigned recognizes that the ALJ did not include the ability to climb ropes in the hypothetical question posed to the VE, but did state that Plaintiff could never climb ropes in the RFC finding. Tr. at 21, 56. The omission of "ropes" in the hypothetical question the ALJ posed to the VE is not material to the instant case. Notably, "ropes" are not explicitly included in the SCO's definition of "climbing." Further, Plaintiff does not raise any argument asserting that the ALJ's inclusion of ropes in the RFC finding was improper based on the evidence or record, or that Plaintiff would be required to climb ropes as a construction inspector, and instead focuses on ladders and scaffolding in apparent recognition that ropes are not explicitly contemplated by the SCO and that the job of construction inspector would not require climbing ropes. *See* ECF Dkt. #15 at 1-2.

[5]In *Lindsley*, the Sixth Circuit explained:

> There is little doubt the ALJ satisfied his obligation under S.S.R. 00-4p by asking [the VE] about any apparent discrepancies between the information provided by the DOT and that which [the VE] himself presented. [The VE] responded that there were no such discrepancies. We do not see a material difference between asking if there are any "discrepancies" and asking whether there are any "conflicts." Nor has [plaintiff] identified any such authority requiring ALJs to conduct a mechanical recitation of the precise language in S.S.R. 00-4p for the purpose of determining whether there are any inconsistencies.

560 F.3d at 606.

-11-

testified that the testimony was consistent with the DOT and Plaintiff was afforded a full opportunity to cross-examine the VE. As the Sixth Circuit has explained, "[t]he ALJ had no duty under S.S.R. 00-4p to interrogate [the VE] further." *Lyndsley*, 560 F.3d at 606. Accordingly, the ALJ reasonably relied on the VE's testimony when determining that Plaintiff could work as a construction inspector, as generally performed.

Plaintiff also asserts that he would have been considered disabled under the Grids had the ALJ properly determined that an individual with his RFC could not perform work as a construction inspector. ECF Dkt. #15 at 14. It is unclear why the ALJ elected to proceed to step five of the sequential evaluation in the decision as it was determined that Plaintiff could perform his past relevant work at step four. *See* Tr. at 16-23. It appears from the decision that the ALJ conflated the discussion of step four and step five. *See id.* In any event, the ALJ properly determined at step four that Plaintiff could perform past relevant work. This determination is supported by substantial evidence, including testimony from the VE stating that Plaintiff was capable of performing past relevant work as a construction inspector.[6] If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made. 20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992)); *Hogg v. Sullivan*, 987 F.2d at 332. Since the ALJ found that Plaintiff could perform his past relevant work at step four of the sequential evaluation, thus requiring a finding that he was not disabled, there was no requirement to assess his claim under the Medical-Vocational Rules at step five. For these reasons, the ALJ's decision is supported by substantial evidence and Plaintiff's claim fails.

---

[6] The VE also testified that Plaintiff could perform work as a mail clerk, sales attendant, and housekeeping cleaner. Tr. at 57.

### **VII.     CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

Date: March 2, 2018                         */s/George J. Limbert*
                                            GEORGE J. LIMBERT
                                            UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).